IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| FREDDIE J. KELLY | PLAINTIFF |
| v.  4:08CV02144-WRW | |
| CITY OF CONWAY, ARKANSAS, and OFFICER CLAYTON SMITH | DEFENDANTS |

## ORDER

Pending is Defendants' Motion for Summary Judgment (Doc. No. 50). Plaintiff, who is proceeding *pro se*, has responded,[1] and Defendants have replied.[2] Also pending is Plaintiff's Motion in Limine / Motion for Summary Judgment (Doc. No. 53). Defendants have responded.[3] For the reasons set out below, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiff's Motion in Limine / Motion for Summary Judgment is DENIED.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[4] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[5]

---

[1] Doc. No. 63.

[2] Doc. No. 65.

[3] Doc. Nos. 59, 60.

[4] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[6] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[7] I must view the facts in the light most favorable to the party opposing the motion.[8] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[9]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[10]

## II.     BACKGROUND

---

[6] *Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[7] *Id.* at 728.

[8] *Id.* at 727-28.

[9] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[10] *Anderson*, 477 U.S. at 248.

Plaintiff, an African American male, is a Licensed Interstate Motor Contract Carrier doing business as The Shoplite Trucking Company based in Chester, Virginia.[11] After a delivery in Wichita, Kansas, Plaintiff drove to Muskogee, Oklahoma, to pick up a load to haul back to Virginia.[12] However, the load was too big to fit in Plaintiff's truck.

On June 27, 2008, Plaintiff was driving east on Interstate 40 ("I-40") with an empty truck.[13] Around 7:17 p.m.,[14] Officer Clayton Smith of the Conway, Arkansas, Police Department stopped Plaintiff for following another vehicle too closely.[15] The video camera in Officer Smith's car recorded Plaintiff's truck from before the stop.[16] The video, which I watched in its entirety, is summarized below.

After stopping Plaintiff, Officer Smith went to the passenger-side window and told Plaintiff he wanted to give him a warning for following too closely to the semi truck in front of Plaintiff.[17] Officer Smith explained how many seconds it should have taken Plaintiff to pass a certain sign if Plaintiff had not been following too closely.[18]

---

[11] Doc. Nos. 55, 58.

[12] *Id.*

[13] *Id.*

[14] Officer Smith's dashboard video camera showed the time of stop as starting at about 19:17:00. I will show the times in this Order as "civilian time"-- 19:17:00 is 7:17 p.m.

[15] Doc. No. 52.

[16] Doc. No. 52, Exhibit A.

[17] *Id.*

[18] *Id.*

Officer Smith asked to see Plaintiff's driver's license. Plaintiff started explaining where he was going and where he had been.[19] At about 7:17:09, after speaking with Plaintiff, Officer Smith asked Plaintiff if he wanted to open the back of his truck.[20] Plaintiff answered that he did not want to, but if Officer Smith wanted him to open the back, he would.[21] Plaintiff asked Officer Smith if he was searching the truck, and Officer Smith said "if that's alright with you"; Plaintiff responded "that's alright with me. I just gotta be sure, ya know."[22]

Plaintiff did not have a key to open the lock on his truck's back door.[23] At about 7:21:42 Officer Smith asked Plaintiff again "it's alright with you if I search it, right?"[24] Plaintiff responded "yes."[25] When Plaintiff asked Officer Smith why he was searching the truck, Officer Smith told Plaintiff that he could say no to the search and that saying no was Plaintiff's right -- Plaintiff again consented.[26] Nowhere during the video does Plaintiff recant his permission.

Officer Smith called for help to cut the lock on Plaintiff's truck.[27] Another officer arrived with bolt cutters, but could not cut the lock.[28] Officer Smith said he wanted to run his dog around

---

[19]*Id.*

[20]*Id.*

[21]*Id.*

[22]Doc. No. 52, Exhibit A.

[23]*Id.*

[24]*Id.*

[25]*Id.*

[26]*Id.*

[27]*Id.*

[28]Doc. No. 52, Exhibit A.

the truck before he called the fire department to cut the lock.[29] Around 7:44:15, Officer Smith's dog alerted to the right, bottom corner of the truck's back door by scratching at that area.[30] Officer Smith led the dog away from the truck and about a minute later returned with the dog -- which alerted a second time at the same area.[31] Officer Smith then called Officer Dunn to come to the scene with his dog.[32] At about 7:51:19, the second dog also alerted to the back door of the truck by scratching at the same area.[33] Officer Smith suggested Plaintiff follow him to the fire station so the lock could be cut off there, and Plaintiff agreed.[34]

The video ends after Officer Smith pulled back onto I-40 on the way to the City of Conway Fire Department. Officers Smith and Dunn and Plaintiff went to the Fire Department, where ultimately an acetylene torch was used to cut the lock.[35] Officers Smith and Dunn searched the truck, but did not find what caused both dogs to alert -- nothing illegal was found during the search.[36]

---

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]Doc. No. 52, Exhibit A.

[35]Doc. Nos. 52, 55.

[36]*Id.*

Plaintiff filed his *pro se* Complaint, alleging that Defendants subjected him to "unconstitutional searches and seizures without probable cause and based solely upon Plaintiff's ethnicity and the color of his skin."[37] Both Defendants and Plaintiff seek summary judgment.[38]

## III. DISCUSSION

**A. Fourth Amendment**

Defendants assert summary judgment is proper because Officer Smith's initial stop was permissible as a minor traffic violation; Plaintiff consented to the search; the search lasted a reasonable amount of time considering that Plaintiff did not have a key to open the lock on his truck; and the officers had probable cause for the search because two drug dogs alerted on the truck.[39] Defendants also contend that because Plaintiff's Complaint does not specify that Officer Smith is being sued in his individual capacity, Officer Smith is being sued in his official capacity only -- which is the same thing as suing the City of Conway.[40] Even if Officer Smith were being sued in his individual capacity, neither Officer Smith nor the City of Conway violated Plaintiff's constitutional rights.

"An officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle . . . ."[41] In Arkansas, "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of

---

[37]Doc. No. 2.

[38]Doc. Nos. 50, 53.

[39]Doc. No. 51.

[40]*Id*.

[41]*United States v. Luna*, 368 F.3d 876, 878 (8th Cir. 2004).

vehicles and the traffic upon and the condition of the highway."[42] Further, "[t]he driver of any motor truck or any motor vehicle drawing another vehicle when traveling upon a roadway outside of a business or residence district shall not follow within two hundred feet (200') of another motor vehicle."[43]

Before the stop, the video shows the position of Plaintiff's truck with respect to an orange road-work sign. It is undisputed that Plaintiff was driving 60 miles an hour.[44] In the video, two seconds pass between the end of the semi in front of Plaintiff passing the sign, and Plaintiff passing the sign. Thus, Plaintiff was apparently less than the required 200 feet behind the truck, which gave Officer Smith probable cause for the initial stop.

Once an officer has probable cause to stop a truck, the officer may "ask the driver routine questions, including those about the destination and purpose of the trip . . . ,"[45] as well as ask for the driver's license and registration.[46] If, based on the totality of circumstances, an officer has a reasonable suspicion of other criminal activity, he may expand the scope of the search.[47]

Officer Smith asked Plaintiff several routine questions at the beginning of the stop. Some of Plaintiff's answers didn't correspond to Officer Smith's questions. For example, when Officer Smith told Plaintiff he was going to give Plaintiff a warning for following too closely, Plaintiff responded something about "back in Oklahoma." When Officer Smith asked Plaintiff if he knew

---

[42] Ark. Code Ann. § 27-51-305(a).

[43] Ark. Code Ann. § 27-51-305(b)(1).

[44] Doc. Nos. 55, 58.

[45] *United States v. Pena-Ponce*, 588 F.3d 579, at *8 (8th Cir. 2009).

[46] *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994).

[47] *Pena-Ponce*, 588 F.3d 579, at *8 (citing *United States v. Guerrero*, 374 F.3d 584, 596 (8th Cir. 2004)).

how much distance he was supposed to have, Plaintiff answered something about being by himself. Officer Smith asked Plaintiff if the truck was his. Plaintiff answered that it was, then began volunteering information about where he had been and why.

Plaintiff told Officer Smith about going to Oklahoma to pick up a load that did not fit in the truck. Officer Smith found it odd that the back of Plaintiff's truck was empty, but locked, and Plaintiff did not have a key.[48] Officer Smith became suspicious of criminal activity.[49] After about four minutes of talking with Plaintiff, Officer Smith asked Plaintiff if it was alright if Officer Smith searched the truck. Plaintiff voluntarily consented, and did not withdraw his consent, even when additional time was needed to cut the lock.

While waiting to get the lock cut off, Officer Smith's dog alerted to the back of the truck. This happened about 27 minutes after Plaintiff was pulled over, and provided probable cause to detain Plaintiff and search the back of the truck -- even if Plaintiff had withdrawn his consent, which he did not.

Because Officer Smith had probable cause to stop Plaintiff initially, Plaintiff consented to the search, the search was completed in a reasonable time, and because Officer Smith had probable cause to search the truck even without Plaintiff's consent, there was no Fourth Amendment violation.

    **B.**    **Fourteenth Amendment**

        **1.**    **Equal Protection**

Plaintiff alleges that Officer Smith stopped him initially because he is African American. To succeed on this claim, a plaintiff must prove that the officer chose to enforce the traffic laws

---

[48]Doc. No. 52, Exhibit B.

[49]*Id*.

on account of Plaintiff's race, "which requires proof of both discriminatory effect and discriminatory purpose."[50] An African American plaintiff alleging the selective enforcement of traffic laws "must normally prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose."[51]

Plaintiff provided no evidence that Officer Smith does not stop similarly situated non-minority drivers. Similarly situated, in this case, would mean a driver on I-40 who was stopped by Officer Smith for an alleged traffic law violation. Plaintiff provided data about the stops Officer Smith made between May, 2007, and December, 2008.[52] According to Plaintiff's own pleading, during that time Officer Smith apparently made 373 stops on I-40 for following too close.[53] Of those 373 stops, 241 were of white drivers and 132 were of black, Hispanic, and Asian drivers.[54]

In the Response to Defendant's Motion for Summary Judgment, Plaintiff adds in new data including Officer Smith's 2009 traffic stops.[55] Apparently, few of Officer Smith's stops in 2009 were on I-40. Of the stops that I understand took place on I-40, the stops were 60% of white drivers, and 40% of blacks and Hispanics.[56]

---

[50]*Johnson v. Crooks*, 326 F.3d 995, 999 (8th Cir. 2003) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

[51]*Id.* at 1000 (internal citations omitted).

[52]Doc. No. 54.

[53]*Id.*

[54]*Id.*

[55]Doc. No. 64, Exhibit D.

[56]*Id.*

The evidence offered by Plaintiff does not support the conclusion that Officer Smith's traffic stops on I-40 resulted in a discriminatory effect. Neither does any evidence support a finding of discriminatory purpose. Further, the United States Supreme Court has held that regardless of an officer's subjective intent, a traffic stop is constitutional so long as the officer had probable cause to believe that a traffic violation had occurred.[57] I found above that Officer Smith had probable cause to stop Plaintiff.

### 2. Procedural Due Process

"No State shall . . . deprive any person of life, liberty, or property, without due process of law."[58] A plaintiff alleging a procedural due process claim must prove that the state deprived him of a protected life, liberty, or property interest, and that the deprivation was made without sufficient process.[59]

Plaintiff contends that Defendants violated the due process clause by: (1) in the warning issued by Officer Smith, citing the statute he allegedly violated rather than writing out the name of the violation;[60] and (2) not informing Plaintiff that Defendants submitted a report to the Arkansas State Police that two drug dogs alerted to Plaintiff's truck on June 27, 2008.

Plaintiff has not shown that either the warning ticket or the report to the Arkansas State police deprived him of a protected interest. Plaintiff also has not shown that any alleged deprivation was made without sufficient process. Because Plaintiff failed to satisfy the elements of a procedural due process claim, his claim fails.

---

[57]*Whren v. United States*, 517 U.S. 806, 813 (1996).

[58]U.S. Const. amend. XIV, § 1.

[59]*Krentz v. Robertson Fire Protections Dist.*, 228 F.3d 897, 902 (8th Cir. 2000).

[60]The warning to Plaintiff, included in his pleadings, has written on it "Follow too Close." Doc. No. 64, Exhibit E.

C.   **Municipal Liability**

To establish municipal liability, a plaintiff must show that the municipality had a custom or policy authorizing the actions that caused the alleged constitutional violation.[61] Plaintiff has provided no evidence of a custom or policy authorizing actions resulting in a constitutional violation.

**CONCLUSION**

Based on the findings of fact and conclusions of law above, Defendants' Motion for Summary Judgment is GRANTED. Plaintiff's Motion for Summary Judgment is DENIED, and Plaintiff's Motion in Limine is DENIED as MOOT.

IT IS SO ORDERED this 20th day of January, 2010.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[61] See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-96 (1978).